EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CECILIO PELLOT CANCELA, acusado y apelante.

*Número:* CR-66-248      *Resuelto:* 8 de febrero de 1967

*Enrique Miranda Merced, Edna Abruña Rodríguez y E. Armstrong de Watlington,* abogados del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Lolita Miranda de Escudero, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El apelante, Cecilio Pellot Cancela, fue convicto por tribunal de derecho de una violación al Art. 155 del Código Penal de Puerto Rico (33 L.P.R.A. sec. 512).[1]

En apelación apunta que el tribunal de instancia incidió al declarar sin lugar su moción de absolución perentoria basada en que la prueba del Pueblo no estableció el propósito del acusado de circular o vender la navajita "Treet" que la

---

[1] El Art. 155 del Código Penal de Puerto Rico, en lo pertinente preceptúa que:

"   .    .    .    .    .    .    .

"Toda persona que en contravención a la ley *tuviere en su poder con intención de circularlas o venderlas,* dentro de una prisión, cárcel o institución penal en Puerto Rico o en los terrenos de la misma, drogas, narcóticos o estupefacientes, armas de cualquier clase, navajas u hojas de afeitar, bebidas alcohólicas o bebidas embriagantes, explosivos, proyectiles o cualquier otro artículo o cosa de contrabando o cualquier carta o mensaje de contrabando, incurrirá en delito grave y convicta que fuere, será castigada con multa máxima de diez mil ($10,000) dólares o prisión no menor de uno ni mayor de diez años, o ambas penas a discreción del tribunal. [Énfasis nuestro.]

"   .    .    .    .    .    .    .

"Las disposiciones de las leyes sobre sentencias probatorias y sentencias indeterminadas no serán aplicables a personas convictas por infracciones a esta Ley."

policía encontró en un vendaje que el apelante tenía en su mano derecha al regresar al presidio de un hospital en donde fue recluido luego de sufrir un accidente en el presidio. Por los fundamentos expuestos a continuación concluimos que procedía declarar con lugar la moción de absolución en cuestión.

La acusación que dio margen a la anterior convicción se expresa como sigue:

"El referido acusado: CECILIO PELLOT CANCELA, allá en o para el día 23 de octubre de 1965 y en Río Piedras, P.R., que forma parte del Tribunal Superior de Puerto Rico, Sala de San Juan, ilegal, voluntaria y maliciosamente y a sabiendas y con la intención criminal de circularla o venderla a otro confinado, tenía en su poder una navajita de seguridad marca "Treet" dentro de la Penitenciaría Estatal de Río Piedras, P.R. en contravención a la Ley y al así tener dicha navajita de seguridad dentro de la referida Prisión, lo hacía o tenía la misma de contrabando."

Los hechos que dieron margen a la anterior acusación se resumen así:

Con anterioridad al día 23 de octubre de 1965, por razón de haber sufrido un accidente, el acusado Cecilio Pellot Cancela, quien se encontraba confinado en la prisión estatal, fue trasladado al hospital que se encuentra en el Professional Building.

El día de los hechos, o sea, el 23 de octubre de 1965, fue dado de alta y trasladado al presidio estatal. Al llegar a la penitenciaría fue llevado a la oficina del teniente de guardias penales, Pedro Juan Rodríguez, donde se le registró. Se le encontró, en un vendaje que tenía en la mano derecha, una navajita marca "Treet" en su envoltura. Se le preguntó al confinado para qué la quería y éste permaneció callado. (2)

_____

(2) A preguntas del fiscal, el testigo Pedro Juan Rodríguez (teniente de guardias penales) declaró:

En la vista del caso, luego de desfilada la prueba de cargo, el abogado de la defensa solicitó la absolución perentoria del acusado por el fundamento de que la prueba del Pueblo no

"P.—¿Qué intervención, si alguna, tuvo usted con el señor Cecilio Pellot Cancela allá para el día 23 de octubre de 1965?

R.—En ese día él regresaba que había sido dado de alta de un hospital que se encontraba de una operación en una mano.

P.—¿Lo llevaron a su oficina?

R.—Lo llevaron a mi oficina.

P.—¿Qué ocurrió en su oficina?

R.—En un vendaje en la mano derecha que tenía, se lo desenvolví.

P.—¿Por qué razón le desenvolvió usted el vendaje?

R.—Vi ciertos movimientos sospechosos, quejándose de la mano y haciendo ciertos ademanes y me llamó la atención. Le registré y dentro tenía una navajita.

P.—¿Cómo era esa navajita señor Rodríguez?

R.—Una navajita marca Treet de éstas estilo 'gem'.

P.—¿Esa navajita estaba en qué condiciones, desenvuelta o envuelta?

R.—Estaba en su envoltura.

P.—Cuándo usted encontró eso, qué usted hizo si algo hizo?

R.—Le pregunté a él, interrogué para qué la quería y entonces lo que hizo fue que se calló y no me quiso contestar.

P.—Y ante esa situación que hizo usted señor Rodríguez?

R.—Jurarle una denuncia y sometí el caso a la corte."

A preguntas del fiscal, Marcos Lebrón Ruiz (guardia penal) declaró como sigue:

"P.—Dígame señor Lebrón, qué intervención, si alguna, tuvo usted con el señor Cancela allá para el 23 de octubre de 1965?

R.—Para esa fecha custodiaba yo al señor Cancela y él estaba en el Professional Building recluído. Entonces el doctor lo dio de alta y yo lo pasé a Presidio bajo mi custodia y al llevarlo a la oficina del teniente. . .

P.—Y qué ocurrió luego de conducirlo a Presidio, si es que algo ocurrió?

R.—Lo llevé a la oficina del Teniente Fortier y entonces allí se registró, lo registró el Teniente Fortier y le encontró una navajita estilo 'gem' envuelta en un vendaje que llevaba en la mano derecha.

P.—Allí cuando el Teniente descubre esa navajita, qué ocurrió, si algo ocurrió?

R.—El Teniente corrió a avisar el cargo allá.

P.—Qué dijo el señor Pellot si algo dijo allí?

R.—No comentó.

P.—Y luego de esto tuvo usted alguna intervención adicional en relación con estos hechos, señor?

R.—No señor.

estableció que el propósito del acusado fuese *circular* o vender la navajita que estaba en su posesión.

El tribunal de instancia determinó que no había prueba en el caso de la intención de vender la mencionada navajita; que eliminada esta alegación por el anterior fundamento, quedaría la alegación de que el acusado intentó circular la navajita dentro del presidio.

Procedieron las partes a señalar lo que entendían por "circular" y entonces el magistrado se reservó su fallo hasta haber oído la prueba de la defensa.

Una vez concluida la prueba de la defensa, el tribunal declaró sin lugar la moción de absolución, la transcripción de la cual no se elevó ante nos. Declarado el apelante culpable del delito en cuestión se le condenó a la pena de uno (1) a dos (2) años de presidio con trabajos forzados para ser cumplidos consecutivamente con las sentencias que se encuentra cumpliendo.

Sostuvo el abogado de la defensa que "circular" conlleva por lo menos actos de entregar a otras personas con intención de que esa cosa que se da o que se desprende uno de ella, pase a manos distintas de las propias.

El ministerio fiscal entendió, por el contrario, que "circular" es sencillamente poner en movimiento, no se requiere que pase de mano en mano.

El Procurador General señala lo dispuesto por el Art. 12 del Código Penal (33 L.P.R.A. sec. 33), es decir:

"La intención se manifiesta por las circunstancias relacionadas con el delito, y el sano juicio y discreción del acusado. . . .

"Una intención maliciosa y criminal se presume por la ma-

---

P.—Tenga la bondad de examinar esta navajita que ha sido marcada identificación I de El Pueblo y dígame si usted la ha visto antes del día de hoy?

R.—Sí, el día del registro. El día que registraron al acusado, esa era.

P.—Estaba en esas mismas condiciones?

R.—Sí."

nera y deliberación con que se intente o cometa un acto ilegal con el propósito de perjudicar a otro."

Informa, además, que de todas las circunstancias del caso se puede deducir la intención del acusado de circular la navajita en el penal. Así lo entendió el juez sentenciador.

De la prueba de cargo del ministerio fiscal surge que se estableció que el acusado tenía en su poder la navajita. El Pueblo no probó circunstancia, evento, hecho o acto alguno del cual pudiera el tribunal sentenciador, razonable y lógicamente deducir o inferir que el acusado, como señala específicamente el Art. 155 del Código Penal de Puerto Rico, *supra*, "tuviere en su poder [la navajita] con intención de circularlas o venderlas." *Pueblo* v. *Carmelo Ortiz García*, Sentencia de 2 de febrero de 1966.

█ El estatuto, como hemos dicho, requiere la intención de circular o vender, es decir, de traspasar de una persona a otra el objeto en cuestión. No basta el solo establecer la posesión material del mismo. Circular quiere decir "Correr o pasar alguna cosa de unas personas a otras"—Martín Alonso, *Enciclopedia del Idioma*. En igual forma se define este verbo por la Real Academia Española. En *Willard* v. *State*, 87 S.W.2d 269 (Ct. Crim. App. Tex. 1935), se dijo que el término "circular" en un estatuto que prohibe la emisión y circulación de sellos falsificados quiere decir "pasarlos de una persona o lugar a otra persona o lugar."

*Por los fundamentos consignados, se revocará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 18 de marzo de 1966 y se absolverá al acusado.*

El Juez Presidente Señor Negrón Fernández no intervino.